**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

TODD E. O., SR.,

                                        Plaintiff,

          v.
                                                    No. 5:20-CV-1046
COMMISSIONER OF SOCIAL SECURITY,                    (CFH)


                                        Defendant.

─────────────────────────────


**APPEARANCES:**                    **OF COUNSEL:**

Amdursky, Pelky Law Firm            AMY CHADWICK, ESQ.
26 East Oneida Street
Oswego, New York 13126
Attorneys for plaintiff

Social Security Administration      LISA SMOLLER, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

     Todd E. O. Sr.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1

───────────────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff's last name by initial only.

("Compl."). Plaintiff moves for reversal and remand for the determination of benefits. See Dkt. No. 13. The Commissioner opposes the motion. See Dkt. No. 14. For the following reasons, the Commissioner's decision is affirmed.

# I. Background

On April 14, 2017, plaintiff filed a Title XVI application for supplemental security income. See T. at 171.[3] Plaintiff initially alleged a disability onset date of August 4, 2010, which was later amended to April 14, 2017. See id. at 171, 240. The Social Security Administration ("SSA") denied plaintiff's claim on June 22, 2017. See id. at 101-103. Plaintiff requested a hearing, see id. 111, and a hearing was held on March 11, 2019, before Administrative Law Judge ("ALJ") Kenneth Theurer. See id. at 31-69. On March 25, 2019, the ALJ issued an unfavorable decision. See id. at 10-21. On July 13, 2020, the Appeals Council denied plaintiff's request for review. See id. at 1-5. Plaintiff commenced this action on September 4, 2020. See Compl.

# II. Legal Standards

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 12. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

1388(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied or it was not supported by substantial evidence.  <u>See</u>

<u>Johnson v. Bowen</u>, 817 F.2d 983, 985-86 (2d Cir. 1987); <u>Berry v. Schweiker</u>, 675 F.2d

464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

that in the record one can find "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d

Cir. 2004) (per curiam) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal

citations omitted)).  The substantial evidence standard is "a very deferential standard of

review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a

reasonable factfinder would have to conclude otherwise."  <u>Brault v. Soc. Sec. Admin.,</u>

<u>Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks, citation, and

emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner

applied the proper legal standards, the decision should not be affirmed even though the

ultimate conclusion is arguably supported by substantial evidence.  <u>See</u> <u>Martone v.</u>

<u>Apfel</u>, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing <u>Johnson</u>, 817 F.2d at 986).

However, if the correct legal standards were applied and the ALJ's finding is supported

by substantial evidence, such finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805

F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the

> [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

**III. The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since April 14, 2017, his application date.  See T. at 12.  At step two, the ALJ found that plaintiff had the following severe impairments: "osteoarthritis of the knees, history of a shoulder impairment, plantar fasciitis, gout, migraines, asthma, degenerative disease of the lumbar spine, depression and anxiety[.]"  Id.  At step three, the ALJ determined that plaintiff did not

have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 13.  The ALJ considered Listings 12.04 for depressive, bipolar, and related disorders; and 12.06 for anxiety and obsessive-compulsive disorders.  See id. at 14. The ALJ found that plaintiff had moderate limitation in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself.  See id. at 14-15.[4]

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except

> he can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for up to six hours; stand or walk for approximately six hours in eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; can perform occasional balance, stooping, kneeling, crouching, and crawling.  He should avoid concentrated exposure to smoke, dust, or respiratory irritants.  The claimant can understand and follow simple instructions and directions; perform simple tasks with or without supervision; can maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; can relate to and interact appropriately with others (coworkers, supervisors and the public) to the extent necessary to carry out simple tasks—i.e. he can ask for help when needed: handle conflicts with others; state his own point of view; initiate or sustain a conversation and understand and respond to physical, verbal and emotional social cues but he should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goal.  The claimant is limited to simple, routine, and repetitive tasks in a work environment involving only simple, work-related decisions; with few, if any, work place changes.

---

[4] The ALJ also considered Listings as it related to plaintiff's gout, shoulder impairment, plantar fasciitis and osteoarthritis of the knees, asthma "with or without consideration of obesity," lumbar spine impairment "with or without consideration of obesity," and epilepsy as "[t]here is not specific [L]isting for migraines[.]"  T. at 14; 13.  Plaintiff does not challenge these determinations.  See Dkt. No. 13.

T. at 16.  At step four, the ALJ determined that plaintiff had no relevant past work.  See id. at 20.  At step five, considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 20.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since April 14, 2017, the date the application was filed[.]"  Id. at 21.

## IV. Arguments[5]

Plaintiff argues that the ALJ's RFC determination and consistency finding related to plaintiff's subjective allegations of pain and intensity are not supported by substantial evidence, and that the ALJ inappropriately discounted the opinion of plaintiff's therapist, Julie Hogle, LCSW-R.  See Dkt. No. 13.  The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence, the ALJ afforded appropriate weight to Ms. Hogle's opinion, and the ALJ properly evaluated plaintiff's subjective complaints. See Dkt. No. 14.

## V. Discussion

### A. RFC Determination

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations. . . .  Ordinarily, RFC is the individual's maximum remaining ability to do

---

[5] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

sustained work activities in an ordinary work setting on a regular and continuing basis[.]"
Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel,
198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional
capacity determination, the ALJ must consider a claimant's physical abilities, mental
abilities, [and] symptomology, including pain and other limitations which could interfere
with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R.
§ 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an
individual's response to demands of work . . . must be reflected in the RFC
assessment.'"  Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3
(N.D.N.Y. Dec. 11, 2012) (quoting Titles II & XVI: Capability to Do Other Work-The
Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional
Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)).
The RFC determination "must be set forth with sufficient specificity to enable [the Court]
to decide whether the determination is supported by substantial evidence."  Ferraris v.
Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  A mental health "RFC assessment process
requires 'a more detailed assessment by itemizing various functions contained in the
broad categories found in paragraphs B and C of the adult mental disorders listings in
12.00 of the Listing of Impairments . . . .'"  Linda E. v. Saul, No. 3:19-CV-357 (NAM),
2020 WL 1875671, at *8 (N.D.N.Y. Apr. 15, 2020) (quoting Titles II & XVI: Assessing
Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *4 (July
2, 1996)).

  "In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of
one medical source's opinion."  Angela G. v. Comm'r of Soc. Sec., No. 5:19-CV-1521

(ML), 2021 WL 22609, at *6 (N.D.N.Y. Jan. 4, 2021) (collecting cases).  Rather, "[a]n ALJ may [] accept portions of a medical opinion that are consistent with the record, and choose not to accept portions that are inconsistent with the record."  Joseph K. v. Comm'r of Soc. Sec., No. 5:17-CV-748 (DJS), 2018 WL 3716780, at *4 (N.D.N.Y. Aug. 2, 2018).  "[I]nconsistencies with objective findings can constitute a good reason for rejecting an opinion or accepting parts of the opinion."  Angela G., 2021 WL 22609, at *7.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)); see Social Security Ruling ("SSR") 16-3p: Titles II and XVI Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *1-2 (Oct, 25, 2017).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Id. (alterations in original) (quoting 20 C.F.R. § 404.1529(a)).  "While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence."  Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *10 (N.D.N.Y. June 9, 2021) (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the

claimant's testimony in light of the other evidence in the record." Genier, 606 F.3d at 49 (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

"Under SSR 16-3p, when evaluating a claimant's symptom intensity, '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record.'" Kearney v. Berryhill, No. 1:16-CV-00652 (MAT), 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (alteration in original) (quoting Vered v. Colvin, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)). The ALJ must "clearly demonstrate[] [that] he considered the entire case record . . . as required by SSR 16-3p." Id. ("The ALJ provided significant detail regarding the basis of this finding, noting there is little objective evidence of record to support the alleged severity of the symptoms [the] [p]laintiff described at the hearing."); see, e.g., Michael H., 2021 WL 2358257, at *11 (affirming the ALJ's determination where the ALJ "examine[d] inconsistencies in the record" between the plaintiff's testimony and the medical records and opinions).

### 1. Prior Administrative Decision

As an initial matter, plaintiff argues that "an ALJ previously considered the records through 2010 and found they warranted an RFC limited to sedentary work" and "[t]he record does not show improvement, but rather, shows worsening in [p]laintiff's conditions and development of additional impairments[.]"  Dkt. No. 13 at 18; see T. at 73-81.  The Commissioner argues that the ALJ was not required to give the 2010 decision any deference.  See Dkt. No. 14 at 10.

On August 3, 2010, an ALJ determined that plaintiff had not been under disability "at any time from March 12, 2005 . . . through September 30, 2009" and that plaintiff had the RFC to perform sedentary work.  T. at 81; 76.  For plaintiff's 2017 claim that is presently at issue, the ALJ explained, "[a]s for medical opinions and prior administrative medical finding[s], I will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s)[.]"  Id. at 19.  To support the ALJ's decision to review the record de novo, the Commissioner cites SSA Acquiescence Ruling 98-3(6), which explains that

> if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata.  Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de [] novo in determining disability with respect to the unadjudicated period.

4 Soc. Sec. Disability Claims Prac. & Proc. App'x 3, Acquiescence Rulings ("AR") 98-3(6) (2nd ed.); see Dkt. No. 14 at 10.  "The Court is not aware of any statement by the Second Circuit . . . directly addressing this [] issue."  Pisarek v. Saul, No. 1:18-CV-0200 (CJS), 2019 WL 4750518, at *6 (W.D.N.Y. Sept. 30, 2019).  As such, according to SSA policy, the ALJ did not err in affording no deference to the 2010 administrative decision.  See T. at 19, 73-81; see Wessel v. Colvin, No. 3:14-CV-00184 (AVC), 2015 WL 12712297, at *5 (D. Conn. Dec. 30, 2015) ("When a plaintiff's claim involves a different unadjudicated time period, an ALJ is not bound by a prior ALJ's findings.").

### 2. Physical Limitations and Consistency of Allegations

In determining severity, the ALJ explained that plaintiff had "a history of bilateral carpal tunnel releases in November and December 2010."  T. at 12 (citing id. at 1139);

see id. at 1143.  The ALJ determined that, "[w]hile the claimant had a positive Tinel's sign at a January 2, 2019[,] office visit, he was found to have no atrophy of the hands; 4/5 grip, which, while reduced, still represents good functional strength; normal sensation and full ranges of motion of the wrists[.]"  Id. at 12 (citing id. at 1143). Additionally, "[a]t a June 12, 2017[,] consultative internal medicine evaluation, the claimant had full ranges of motion of the wrists and elbows, intact hand/finger dexterity and 5/5 grip bilaterally[.]"  Id. (citing id. at 595).  The ALJ also explained that plaintiff can drive a car, care "for his personal needs without assistance," cook, clean, and do laundry.  Id. at 13 (citing id. at 45, 594).  Finally, the ALJ noted that "[t]here are no recent EMG/NC studies of record and there is little in the record relating to carpal tunnel issues . . ."; therefore, "[b]ased on the minimal findings of record and the ability to perform a wide range of activities of daily living, I find that the claimant has failed to satisfy his burden of establishing that his carpal tunnel syndrome is severe."  Id.

Regarding plaintiff's subjective complaints, the ALJ recounted his testimony that he has pain in his knees, lower back, and shoulders; gets gout two- to three-times a month for days at a time; uses an inhaler for his asthma; and has migraines two- to three-times a month.  See T. at 16, 44, 47, 49, 51-53.  The ALJ acknowledged plaintiff's "testimony that he has gout flare-ups, sometimes every other month, sometimes twice a month, and it affect his ankles and sometimes his left wrist."  Id. at 16; see id. at 52. Additionally, plaintiff "testified that he has depression and anxiety and sometimes has panic attacks, including while driving due to excessive noise and commotion . . . [and] he gets depressed over not being able to do what he wants and not being able to help his family and himself."  Id. at 16-17; see id. at 57-60.  Further, the ALJ recounted that

plaintiff "uses an inhaler in the morning and [] 2-3 times during the week"; "cannot bend very much with his back [and] has to sit to the side at times"; "can stand for 10-15 minutes"; "is 'lucky' if he can read through a page of material due to poor concentration, and can concentrate for maybe 20 minutes"; and "does some things around the house daily and watches some television."  Id. at 17; see id. at 45, 49, 55-57, 61.

Next, the ALJ extensively reviewed plaintiff's objective medical records.  See T. at 17-18.  The ALJ first noted that plaintiff "had two back surgeries, with the most recent procedure on October 8, 2018 being redo laminectomy at L5, a new laminectomy at L4, removal of L5-S1 instrumentation with new instrumentation at L4-5[.]"  Id. at 17 (citing id. at 273, 1036).  Then, plaintiff's lumbar spine MRI on March 18, 2018, compared to prior imaging, showed "improved now mild L4-5 central canal stenosis and L3-4 increased bilateral facet joint hypertrophy with moderate to severe central canal stenosis and increased moderate bilateral neuroforaminal stenosis[.]"  Id. (citing id. at 1036-37).  Moreover, the ALJ observed that, "[d]espite [plaintiff's] complaints of constant low back discomfort, [he] saw an orthopedist in May 2016 but then again not until February 21, 2018, had follow ups on March 16, 2018, and April 20, 2018, and has not seen an orthopedist since then for his low back[.]"  Id. at 17 (citing id. at 842-71, 985-1011, 1051-56).  The ALJ also explained that plaintiff had "EMGs done August 2, 2018 at the pain clinic [which] were suggestive of bilateral L5 radiculopathies, without acute denervation, entrapment mononeuropathy or generalized large fiber peripheral neuropathy[.]"  Id. (citing id. at 856).

As to plaintiff's knees, the ALJ explained that he "has a history of arthroscopies of the knees bilaterally for ACL tears and laxity from 2001-2005" but "[i]t appears he did

well thereafter, until he complained of left knee discomfort in 2017.  An x-ray taken on June 13, 2017, was read as showing degenerative joint disease[.]"  T. at 17 (citing id. at 264-559, 597).  However, X-rays of plaintiff's left knee on "June 28, 2017 were read as showing no acute bone abnormality, with findings suggestive of a loose body; no right knee x-rays were taken."  Id. (citing id. at 811).  On June 30, 2017, the "orthopedist read the x-rays . . . as showing no loose body," but there was "'some' degenerative change of the left knee, an intact ACL and no acute abnormalities[.]"  Id. (citing id. at 1015).  Plaintiff "did not return to the orthopedist until March 22, 2018, at which time he initially complained of bilateral knee discomfort and was found to have small effusions and 'fairly good' motion of both knees[.]"  Id.  The ALJ noted that "there is no documentation showing a return to the orthopedist for further evaluation or treatment of the knees since [then.]"  Id. (citing id. at 1020).

As to plaintiff's gout, the ALJ noted that "[a] review of the record confirms [plaintiff's] testimony that his gout is quite episodic, with no evidence showing a frequency of 2-3 times a month, however."  T. at 17 (citing id. at 888-956, 1021-34).  Moreover, the ALJ acknowledged that plaintiff's "left ankle appears to be the most frequently affected . . . [t]he gout is treated with Prednisone and resolves in several days" and "the record show[s] some swelling on examinations[.]"  Id. (citing id. at 888-956, 1021-34).  The ALJ summarized plaintiff's functional abilities:

> [c]lincial findings of record generally document a normal gait and stance, moderately reduced ranges of motion of the lumbar spine, full ranges of motion of the shoulders, 5/5 lower extremity strength, 5/5 ankle strength, intact lower extremity sensation with only several episodes of decreased sensation of the left calf, no muscle atrophy of the lower extremities, negative straight left raising, 5/5 grip strength with one episode of 4/5 left grip and 5/5 upper extremity strength.

Id. at 17-18 (citing id. at 593-99, 822-73, 888-956, 985-1035, 1051-57, 1138-48).

Finally, the ALJ addressed plaintiff's shoulder pain.  See T. at 18.  The ALJ noted that "[t]here is no evidence showing the claimant has received treatment for or evaluation of the shoulders since filing for benefits."  Id.  The ALJ recounted that plaintiff had "a remote history of right shoulder arthroscopies in 1997" but "was found to have full ranges of motion in the neck and shoulders bilaterally at the June 2017 consultative internal medicine evaluation, with full ranges of motion of the elbows and wrists and intact hand and finger dexterity[.]"  Id. (citing id. at 297-300, 595).  Additionally, he noted that plaintiff "was diagnosed with right plantar fasciitis in February 2015, but it does not appear that he received treatment for this since filing for benefits, nor did he mention it at the June 12, 2017[,] consultative internal medicine evaluation[.]"  Id. at 18 (citing id. at 351, 593-96).  Despite the lack of record evidence, the ALJ explained that plaintiff's "remote history of right shoulder surgeries and plantar fasciitis have been considered in articulating a residual functional capacity.  The claimant's BMIs in the 30s also have been considered in articulating a residual functional capacity."  Id.

### a. Physical RFC

Plaintiff contends that "[t]he evidence, which includes four knee surgeries, two lower back surgeries, ankle impairment, gout attacks involving the feet and ankles, and obesity does not support the conclusion that the [p]laintiff would be able to stand and walk for six hours per day."  Dkt. No. 13 at 16.  Plaintiff argues that the ALJ erred in not finding his carpal tunnel syndrome severe or considering the limiting effect of it.  See id. at 21.  Additionally, because of his carpal tunnel syndrome, plaintiff avers that his RFC should include a limitation on handling, fingering, and feeling.  See id. at 20-21.  The

Commissioner argues that the ALJ's RFC is supported by substantial evidence, and that plaintiff seeks "to have this Court reweigh the evidence, which is impermissible."  Dkt. No. 14 at 5.

The Court determines that the ALJ conducted an extensive review of the objective medical evidence such that the Court can "glean [his] rationale" in crafting plaintiff's RFC.  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("Where the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (citations and internal quotation marks omitted) (alterations in original).  Plaintiff's contention that "there is no indication that" the ALJ considered the limiting effects of his carpal tunnel syndrome is inaccurate.  See Dkt. No. 13 at 21.  After finding that plaintiff's carpal tunnel syndrome was not a severe impairment, the ALJ explicitly discussed the findings in the record that reflected plaintiff's carpal tunnel diagnosis, occasionally-reduced grip strength, and intact dexterity.  See T. at 12-13 (citing id. at 594-95, 1139, 1143).  The record reflects plaintiff's carpal tunnel diagnosis, but the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citation and internal quotation marks omitted); see T. at 1143-44.  There is nothing in the record indicating that a greater limitation is warranted as it reflects that plaintiff's hand and finger dexterity were intact and he had "5/5 grip strength with one episode of 4/5 left grip[.]"  T. at 18, 595, 1144; see, e.g., Trifiletti v. Comm'r of Soc. Sec., No. 1:14-CV-1427 (GTS/WBC), 2016 WL 536623, at *4

(N.D.N.Y. Jan. 22, 2016), report and recommendation adopted, 2016 WL 552953 (N.D.N.Y. Feb. 10, 2016) (affirming where "[t]he ALJ assessed [the] [p]laintiff's carpal tunnel syndrome and substantial evidence supported the ALJ's ultimate determination that [the] [p]aintiff had no limitations in handling and fingering due to her carpal tunnel syndrome" because the plaintiff had "fine motor activity and finger dexterity were intact and her grip strength was 5/5 bilaterally.").

To support his argument that he requires greater limitations, plaintiff cites to records that precede his onset date. See Dkt. No. 13 at 15-22. "Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." Moore v. Comm'r of Soc. Sec., No. 1:16-CV-270 (DJS), 2017 WL 1323460, at *9 (N.D.N.Y. Apr. 10, 2017) (citations and quotation marks omitted). Therefore, "[a]lthough it is within an ALJ's purview to consider pre-onset date evidence, it is not required." James N. v. Comm'r of Soc. Sec., No. 3:18-CV-1324 (CFH), 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020).

The ALJ noted that plaintiff had right shoulder surgery "in the 1990s[,]" "was diagnosed with right plantar fasciitis in February 2015," and had "a history of arthroscopies of the knees bilaterally for ACL tears and laxity from 2001-2005[,]" but did not otherwise cite to evidence predating plaintiff's onset date. T. at 16, 18. Plaintiff does not argue that the ALJ erred in primarily referencing records from after his alleged onset date, and "the key question . . . is whether [p]laintiff demonstrated her [impairments] would result in a functional limitation beyond those the ALJ already articulated in her RFC." Adanma T. v. Comm'r of Soc. Sec., No. 5:20-CV-00173 (TWD), 2020 WL 6637598, at *4 (N.D.N.Y. Nov. 12, 2020) (finding no error in the ALJ's decision

where "most of the evidence [the] [p]laintiff references in her argument pre-dates her alleged onset date[,]" the ALJ did not explicitly reference the evidence, but the ALJ's RFC was "inclusive of" the referenced impairments.).

Plaintiff cites to 2018 records wherein a physician found that "[f]rom his knees alone, I would say at this point in time he is 50% disabled[]" and "[t]he percentage of temporary impairment [related to plaintiff's back] is 100%." T. at 1019; 837; see Dkt. No. 13 at 17. These assessments were a part of plaintiff's worker's compensation case. See T. at 837, 1019. As the Commissioner explains, "a decision by any other government agency or nongovernmental entity . . . is not binding" on the SSA. 20 C.F.R. § 416.904; Dkt. No. 14 at 7.[6] "But, despite differing definitions and eligibility standards, disability determinations made by other government agencies (e.g., Veterans Administration, state workers' compensation boards) are entitled to some weight and should be considered." Bartko v. Comm'r of Soc. Sec., No. 1:13-CV-373 (GLS/ESH), 2014 WL 4973158, at *6 (N.D.N.Y. Sept. 30, 2014) (citations and quotation marks omitted). The ALJ did not restate the worker's compensation disability findings, but he explicitly referenced the records, explaining that plaintiff had a follow-up appointment for his back pain on "April 30, 2018, and ha[d] not seen an orthopedist since then" and he had "small effusions" but "'fairly good' motion of both knees." T. at 17, 837, 1019; see Bartko, 2014 WL 4973158, at *7 (citations omitted) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

---

[6] "[T]he standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary." Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994); see also William J. D. v. Comm'r of Soc. Sec., No. 1:17-CV-0981 (DEP), 2018 WL 6671533, at *6 (N.D.N.Y. Dec. 19, 2018).

The remaining records plaintiff highlights relating to his back reflect his surgeries; that he had bilateral facet joint hypertrophy, moderate-to-severe central canal stenosis, moderately-limited range of motion of the lumbar spine and bilateral radiculopathy; and that he was referred to a pain clinic.  See Dkt. No. 13 at 17-18.  The ALJ considered these records.  See T. at 17.  Moreover, although in March 2018 plaintiff had a "modestly antalgic" gait, id. at 831, the record reflects that plaintiff frequently appeared to be in no acute distress, had a normal gait and stance, and "5/5 lower extremity strength."  Id. at 18, 845, 856, 869, 1010, 1053; see David B. C. v. Comm'r of Soc. Sec., No. 1:20-CV-01136 (FJS/TWD), 2021 WL 5769567, at *12 (N.D.N.Y. Dec. 6, 2021) (affirming where "the ALJ considered the medical and other evidence in the record in making an RFC determination, provided a proper analysis of the evidence in the record, and provided sufficient analysis to permit the Court to meaningfully review the decision.").

As to his knees, the ALJ referenced the records that plaintiff highlights—left knee pain in June 2017 and an X-ray showing "some degenerative changes[] . . . ACL tunnels are intact[,]" no loose body, and no acute abnormalities.  T. at 1015; 17.  The ALJ correctly noted that plaintiff was not seen again for his left knee pain until March 22, 2018, and at this time, "[h]is knees ha[d] small effusions" with "'fairly good' motion in both of his knees."  Id. at 1019; see Franklin v. Saul, 482 F. Supp. 3d 250, 265 (S.D.N.Y. 2020) (explaining that "the ALJ did acknowledge [the plaintiff's] severe impairments of his knees and back, . . . and this was reflected in an RFC to perform sedentary-light work as opposed to the medium-to-heavy work[.]").

As to plaintiff's gout, the record reflects almost monthly flare ups throughout 2017, 2018, and 2019.  See Dkt. No. 13 at 19-20.  The ALJ "review[ed] [] the record confirm[ing] the claimant's testimony that his gout is quite episodic[.]"  T. at 17.  Plaintiff contends that his gout flares cause "his ability to stand and walk [to be] significantly limited."  Dkt. No. 13 at 18.  The record indicates that when plaintiff was experiencing gout flares, he sometimes had a limited range of motion and would experience pain in his joints, but otherwise had a normal gait, full range of motion in his extremities, and the "[o]verall findings were normal."  T. at 892; 568, 804, 814, 892, 914, 926, 935, 945, 978, 1090, 1104.

Finally, as to his shoulders and obesity, plaintiff states that he had two shoulder surgeries in 1997 and continued to have pain with movement, and that as of December 2018 he was obese.  See Dkt. No. 13 at 7-8.  Plaintiff argues that his obesity, in conjunction with his knee and back surgeries, ankle impairment, and gout attacks "do not support the conclusion that [he] would be able to stand and walk for six hours a day."  Id. at 16.  Plaintiff makes no argument related his shoulder impairment; rather, he recites the medical evidence, and states that he alleged it to be a severe impairment and the ALJ found it to be severe.  See Dkt. No. 13 at 8, 11-12; see T. at 12.  The ALJ expressly considered plaintiff's obesity and "history of a shoulder impairment" and noted their "consider[ation] in articulating a residual functional capacity."  T. at 12, 18; see Lewis v. Comm'r of Soc. Sec., No. 3:16-CV-1267 (WBC), 2018 WL 557869, at *4 (N.D.N.Y. Jan. 16, 2018) ("[i]t is not enough for [the] [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.").

Plaintiff fails to identify any records that indicate greater physical functional limitations than those outlined in the RFC; thus, the ALJ's decision is supported by substantial evidence.  See David B. C., 2021 WL 5769567, at *12 (citation and quotation marks omitted) ("[I]t is [the] [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ and [the] [p]laintiff failed to do so.").

### b. Consistency of Allegations

In finding that plaintiff's allegations of pain and intensity were not consistent with the record, the ALJ reviewed the objective evidence as detailed above.  See supra at 11-15.  Plaintiff contends that the ALJ's analysis is internally inconsistent because "Counselor Hogle['s] opinion was discredited in part because [p]laintiff was able to obtain necessary treatment . . .  [but] [a]t the same time . . . [p]laintiff was also discredited for not obtaining enough treatment"; therefore, "[t]his put [p]laintiff in the impossible position of being unable to establish his physical impairments because he did not get enough treatment, while being unable to establish his mental impairments because he sought too much treatment."  Dkt. No. 13 at 25.  The ALJ found plaintiff's complaints of constant pain inconsistent with the record, in part, because he (1) "saw an orthopedist in May 2016 but then again not until February 21, 2018"; (2) had a history of arthroscopies of the knees from 2001-2005 and "did well thereafter, until he complained of left knee discomfort in 2017"; and (3) had a remote history of right shoulder arthroscopies in 1997 and was diagnosed with right plantar fasciitis in 2015 but did not "receive[] treatment for this since filing for benefits."  T. at 17-18.  The ALJ discounted Ms. Hogle's opinion, in part, because of plaintiff's ability to interact with his other care

providers; travel long distances; and relay his wants, needs, and "medical, social and vocational histories." Id. at 19; 18.

The Court finds no inconsistency between these separate findings.  That the ALJ discounted Ms. Hogle's severe mental limitations because plaintiff was able to interact and communicate with, and travel to, his various providers is not inconsistent with the ALJ's decision to discount plaintiff's allegations of pain because he did not seek continuous treatment for his physical limitations.  See T. at  17-20.  Regardless, the ALJ's decision is supported by substantial evidence as he thoroughly reviewed the objective evidence and summarized plaintiff's mostly normal gait, "moderately reduced ranges of motion of the lumbar spine, full ranges of motion of the shoulders, 5/5 lower extremity strength, and 5/5 ankle strength, intact lower extremity sensation . . . no muscle atrophy of the lower extremities, [and] negative straight leg raising[.]" Id. at 18; see Brian C. v. Comm'r of Soc. Sec., No. 5:20-CV-534 (DJS), 2021 WL 1946503, at *4 (N.D.N.Y. May 14, 2021) ("It is clear to the Court that the ALJ here found that . . . the intensity and persistence of the [plaintiff's] alleged pain [is] unsubstantiated" where the ALJ reviewed the reviewed the plaintiff's medical records reflecting both complaints of pain and objective findings, which indicated mild impairments with full range of motion.). Moreover, as explained below, the ALJ appropriately reviewed the mental health findings of record which indicated that plaintiff continuously presented as depressed and anxious, but his limitations were not as severe as Ms. Hogle opined.  See T. at 19-20; see also infra at 29-35.

Plaintiff next argues that the ALJ's decision is flawed with respect to his gout and back pain because he testified that his gout flares occur "anywhere between twice per

22

month to once every other month" and "[t]here are examinations noting antalgic gait as well as positive straight leg raises and pain with lumbar motion." Dkt. No. 13 at 26. The ALJ expressly noted plaintiff's testimony regarding the frequency of his gout flare ups and pain with lumbar motion. See T. at 16. Moreover, although there is evidence reflecting an antalgic gait, see id. at 356, 780, 825, 831, as the ALJ appropriately noted, the record also shows normal gait and stance and moderately-reduced ranges of motion. See id. at 18, 987, 1010, 1053; see Laura Anne H. v. Saul, No. 6:20-CV-397 (TWD), 2021 WL 4440345, at *3 (N.D.N.Y. Sept. 28, 2021) (affirming where "the ALJ thoroughly summarized the objective medical evidence in the record, highlighting the objective imaging and intact physical examination findings, noted [the] [p]laintiff's treatment and her related improvement, discussed the medical opinions of record, and noted [the] [p]laintiff's daily activities.").

Finally, plaintiff argues that the ALJ erred in citing Kalyani Ganesh, M.D.'s records because he found Dr. Ganesh's opinion to be unpersuasive. See Dkt. No. 13 at 26. Dr. Ganesh opined that plaintiff had "[n]o limitations [with] sitting, standing, and walking . . . [and] moderation limitation[s] [in] lifting, carrying, pushing, and pulling." T. at 596. The ALJ found this opinion unpersuasive "[i]n light of the above discussed clinical evidence" indicating that plaintiff had "various exertional and non[-]exertional limitations." Id. at 20. The ALJ referenced Dr. Ganesh's review of plaintiff's June 2017 X-ray showing degenerative joint disease. See id. at 17, 597. The ALJ also cited Dr. Ganesh's examination findings that plaintiff had "5/5 lower extremity strength," "5/5 grip strength," no muscle atrophy, full range of motion in the shoulders, and normal gait. Id. at 18; 594-95. The ALJ was entitled to discount Dr. Ganesh's "no limitations"

conclusions as inconsistent with the record and rely on his objective examination findings to discount plaintiff's credibility as long as both determinations are supported by substantial evidence.  See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); see also Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order) ("After extensively detailing the medical evidence and [the plaintiff's] testimony, the ALJ afforded her statements only 'partial credibility' because 'they were inconsistent with the objective evidence in the record.'").  The ALJ's decision to find Dr. Ganesh's opinion unpersuasive is supported by substantial evidence because the record, as the ALJ explained earlier in his decision, reflects that plaintiff had some limitations in sitting, standing, and walking.  See T. at 17, 20, 596, 1015, 1053-54; see also Jeanette J. v. Saul, No. 6:19-CV-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) ("It is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses.").

The ALJ sufficiently detailed the reasons for his findings.  Plaintiff asks "the Court to reweigh the evidence and second-guess the ALJ's conclusions related to her symptoms.  However, the Court is not permitted to do so when the record demonstrates substantial evidence supports the ALJ's decision." Laura Anne H., 2021 WL 4440345, at *5.  The ALJ considered plaintiff's complaints of pain and intensity and thoroughly reviewed the objective medical records such that remand is not warranted on this ground.  See, e.g., Sarah C. v. Comm'r of Soc. Sec., No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *6 (N.D.N.Y. Mar. 29, 2021).

### 3. Mental Limitations

Plaintiff argues that the ALJ committed reversible error by failing "to incorporate any time off task, absent, or unable to complete the workday into the RFC[.]"  Dkt. No. 13 at 21.  The Commissioner argues that the ALJ's mental RFC determination is supported by substantial evidence because (1) the ALJ appropriately discounted Ms. Hogle's mental health opinions, and (2) other providers found that plaintiff had normal mental health findings.  See Dkt. No. 14 at 16-19, 21-25.

The ALJ explained that plaintiff had been in counseling since February 2017 and "generally presents at mental health counseling sessions as depressed and/or anxious but sometimes with a neutral mood, with intact thought processes[.]"  T. at 18 (citing id. at 1063-36).  The ALJ observed that, "[a]lthough Julie Hogle, LCSW-R, generally notes that [plaintiff] presents as depressed/anxious and rarely angry and stressed, [plaintiff's] nonmental health providers consistently note that [plaintiff] presents in no acute distress and with an appropriate/normal mood and affect, without any observed cognitive deficits[.]"  Id. at 18 (citing id. at 822-73, 888-957, 985-1035, 1051-57, 1138-48).  The ALJ recounted psychiatric consultative examiner Jeanne Shapiro, Ph.D.'s observations that plaintiff "was cooperative, his social skills and manner of relating were adequate, his motor behavior was normal, his thought processes were coherent, his affect was full range with a mood that appeared relaxed and comfortable although he stated he felt 'agitated', and his attention/concentration and recent/remote memory skills were intact[.]"  Id. at 18 (citing id. at 588-89).  The ALJ reviewed Dr. Shapiro's opinions that plaintiff "did not qualify for a psychiatric diagnosis[,] . . . the 'results of the examination do not appear to be consistent with any psychiatric problems that would significantly

interfere with [plaintiff's] ability to function on a daily basis' . . . and . . . [plaintiff] reported being able to manage all personal and daily living needs independently[.]" Id. (quoting id. at 590).  The ALJ concluded that "Dr. Shapiro's examination constitutes some evidence contrary to Counselor Ho[gl]e's progress notes documenting [plaintiff] presented as depressed and/or anxious."  Id.  The ALJ also explained that plaintiff "somewhat minimized his activities of daily living at the hearing and emphasized his history of remote arthroscopies and surgeries" but "reported caring for his personal needs[,]" grooming independently, living alone for part of the period in issue and with his twenty-one-year-old son, cooking, cleaning, preparing food, driving a car, doing laundry, managing money, and "in general . . . [being] able to maintain himself independently in the community[.]"  Id. at 19 (citing id. at 590, 594).

Plaintiff contends that "[t]he combined effect of the pain and symptoms caused by [p]laintiff's conditions impact his ability to stay on task and would cause him to miss work and be unable to complete the workday at time."  Dkt. No. 13 at 21.  In support, plaintiff cites only Ms. Hogle's opinion that plaintiff would be off task for more than thirty percent of the workday and would miss five or more days of work per month.  See id.; see T. at 1152.  The ALJ discounted Ms. Hogle's opinion where she opined that plaintiff had more than moderate limitations.  See T. at 19; see Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) ("[The plaintiff] criticizes the ALJ's reliance on an RFC that did not incorporate the functional limitations asserted by [the] treating physicians regarding attendance and ability to remain on task.  But these opinions were discounted, and their conclusions rejected.").  Although plaintiff is correct that the ALJ did not expressly mention Ms. Hogle's opinion that plaintiff would be off task for thirty

percent of a workday, "[t]he ALJ [i]s not required to mention or discuss every single piece of evidence in the record." Barringer, 358 F. Supp. 2d at 78.  Additionally, the records plaintiff cites to support his allegations of pain make no findings as to any limitation in plaintiff's ability to stay on task or complete a workday.  See T. at 897, 910, 931, 1022, 1027.  As plaintiff has failed to adduce any medical evidence calling into question the ALJ's decision to reject a "time off task" limitation, remand is not warranted on this ground.  Dkt. No. 13 at 21.

### B. Weight of Medical Opinions

Plaintiff argues that, because the ALJ found each of the medical sources' opinions unpersuasive, the ALJ did not have a competent medical opinion on which to base the RFC, leaving it unsupported by substantial evidence.  See Dkt. No. 13 at 15-16.  Plaintiff also argues that the ALJ did not give appropriate weight to Ms. Hogle's opinion, failed to consider the required factors under 20 C.F.R. § 416.920c, and "used evidence to discredit Counselor Hogle's opinion that should not have outweighed her records or opinion."  Id. at 24; 22.  The Commissioner argues that the ALJ's decision is supported by competent medical evidence because it is the "ALJ who is charged with determining a claimant's RFC and that this finding is based on the medical and non-medical evidence in the record."  Dkt. No. 14 at 3; 16-22.

Under the new regulations applicable to plaintiff's claim, the Commissioner no longer gives specific evidentiary weight to medical opinions.  See Warren I. v. Comm'r of Soc. Sec., No. 5:20-CV-495 (ATB), 2021 WL 860506, at *4 (N.D.N.Y. Mar. 8, 2021).  Rather, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency;

relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  Id. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  Id. §§ 404.1520c (b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).[7]

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his decision, [and] he [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]"  Smith, 740 F. App'x at 726

[7] The ALJ is not required to discuss the remaining factors unless he or she finds that two or more medical opinions are equally supported and consistent with the record.  See 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

28

(citation and quotation marks omitted).  Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question []; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision."  Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted).  The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ."  April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted); see also Barringer, 358 F. Supp. 2d at 79.

The ALJ reviewed Ms. Hogle's 2019 assessment wherein she opined that plaintiff had

> no ability to function independently in understanding, remembering and carrying out very short and simple and detailed instructions; maintaining attention and concentration for extended periods of time, performing activities within a schedule, sustaining an ordinary routine, working in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms; responding appropriately to changes in the workplace, being aware of normal hazards and traveling to unfamiliar places; and has a fair ability to interact appropriately with the general public, ask simple questions, accept instructions and respond appropriately to criticism from supervisors and get along with co-workers[.]

T. at 19 (citing id. at 1150-52).  The ALJ "did not find this opinion persuasive."  Id.  The ALJ acknowledged that plaintiff "has presented as depressed and/or anxious at counseling sessions" but noted that "he is able to focus and attend sufficiently to make his wants and needs known, discuss his mental status and provide background

information, including medical, vocational and social histories, such that the limitations

on understanding, remembering, and applying information and attention are not

supported[.]"  Id.  (citing id. at 1063-1136).  Further, the ALJ observed that plaintiff's

"interactions with his care providers and evaluators, including Dr. Shapiro, have been

consistently appropriate," and because he is able to provide his histories, "Counselor

Hogle's limitations on concentration, memory, adhering to a schedule and for social

interactions are not consistent with and supported by the evidence of record."  Id. at 19.

Additionally, because plaintiff "is able to participate fully in his treatment and counseling

sessions," the ALJ found that "extreme limitations on understanding, remembering and

carrying out even simple instructions is not supported by either [Counselor Hogle's own]

progress notes or the treatment notes from other care providers[.]"  Id. (citing id. at 587-

99, 822-73, 888-957, 985-1035, 1051-57, 1063-1148).  The ALJ continued, "[a]s to not

being able to travel to unknown places or be aware of normal hazards, the claimant has

consistently presented as cognitively intact and he was planning on doing a month long

travel trip with someone but the trip was cancelled for reasons unrelated to his mental

status[.]" Id. (citing id. at 1063-1137).  The ALJ noted that plaintiff "travels more than 10

miles to see Counselor Hogle," and, to see his "medical specialists," "the claimant has

to travel 30-40+ miles for each office visit, which does not support the identified

limitations on being aware of hazards and on traveling."  Id.  Finally, the ALJ explained

that "the record [] documents visits to Oswego Hospital, which is some distance from

[his home]," and concluded that "Counselor Ho[gl]e [] does not give adequate

consideration to the claimant's abilities to perform a wide range of activities in daily

living and manage his daily life independently[.]"  Id. at 19-20.

30

The ALJ reviewed Dr. Shapiro's consultative examination finding that plaintiff had no mental health limitations in any of the relevant categories, and noted that "[a] State Agency program psychologist accepted Dr. Shapiro's conclusions that the claimant did not qualify for a psychiatric diagnosis." T. at 20 (citing id. at 590; 88-99). The ALJ determined that

> Dr. Shapiro's opinion and the findings of the program psychologist are not persuasive, in light of additional evidence made part of the record at the hearing level, including the progress notes from Counselor Ho[gl]e. I will find that the claimant has some limitations on his mental functioning, but not as limiting as identified by Counselor Ho[gl]e.

Id. at 20.

Plaintiff correctly notes that the ALJ found each of the medical opinions "unpersuasive." Dkt. No. 13 at 16; see T. at 19-20.[8] However, "[c]aselaw from this Circuit [] supports the conclusion that an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion." Natasha M. v. Comm'r of Soc. Sec., No. 1:20-CV-1142 (WBC), 2021 WL 5138345, at *3 (W.D.N.Y. Nov. 4, 2021) (citing e.g., Cook v. Comm'r of Soc. Sec., 818 F. App'x 108, 109-110 (2d Cir. 2020) (summary order) (alterations in original) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . . Here, the treatment notes were in line with the ALJ's RFC determinations."); Monroe v. Comm'r of Soc.

---

[8] The cases the parties cite to support their respective arguments are distinguishable. See Dkt. No. 13 at 15-16; Dkt. No. 14 at 3-4. In each case, the ALJ found at least one of the relevant medical opinions somewhat persuasive or afforded it some level of weight. See Thomas M. N. v. Comm'r of Soc. Sec., No. 5:19-CV-0360 (GTS), 2020 WL 3286525, at *4 (N.D.N.Y. June 18, 2020); Amy C. v. Comm'r of Soc. Sec., No. 3:20-CV-0546 (ML), 2021 WL 1758764, at *8 (N.D.N.Y. May 4, 2021); Patricia K. v. Comm'r of Soc. Sec., No. 5:20-CV-37 (ATB), 2020 WL 7490323, at *12 (N.D.N.Y. Dec. 21, 2020); Kevin F. v. Comm'r of Soc. Sec., No. 5:18-CV-1454 (ATB), 2020 WL 247323, at *9 (N.D.N.Y. Jan. 16, 2020).

Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) ("Where . . . 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' . . . a medical source statement or formal medical opinion is not necessarily required[.]") (quoting Tankisi v. Comm'r of Soc. Sec., 521 F. App'x. 29, 34 (2d Cir. 2013) (summary order)).  This Court has held similarly.  See Galo G. v. Comm'r of Soc. Sec., No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *7 (N.D.N.Y. Nov. 9, 2021) (explaining that although the ALJ found each of the relevant mental health opinions "unpersuasive," "the ALJ adequately considered the relevant factors, particularly supportability and consistency, . . . [and] [h]aving properly addressed their opinions in coming to his RFC determination, the Court [] holds that there is substantial evidence in the record to support the ALJ's determination."); compare Leslie H. L. v. Comm'r of Soc. Sec. Admin., No. 3:21-CV-00150 (SALM), 2021 WL 5937649, at *5-6 (D. Conn. Dec. 16, 2021) (remanding where "the ALJ was presented with two medical opinions regarding [the] plaintiff's physical limitations and found both to be 'unpersuasive[]'" and treatment notes "do not comment on how [the] plaintiff's conditions affect his functional abilities.").

Here, the ALJ reviewed Counselor Hogle's 2019 mental assessment and determined that it was "not consistent with and supported by the evidence of record."  T. at 19.  Plaintiff's contention that the ALJ did not address the necessary factors in 20 C.F.R. § 416.920c(c) is inaccurate.  See Dkt. No. 13 at 24.[9]  In coming to his conclusion, the ALJ relied on plaintiff's ability "to perform a wide range of activities of

---

[9] Given that the ALJ did not find that Ms. Hogle's opinion was as equally persuasive as another opinion, the ALJ was not required to discuss the remaining 20 C.F.R. § 416.920c(c) factors.  See 20 C.F.R. § 416.920c(b)(2)-(3); see also Amanda R. v. Comm'r of Soc. Sec., No. 6:20-CV-596, 2021 WL 3629161, at *6 (N.D.N.Y. Aug. 17, 2021) (quoting Dany Z. v. Saul, 531 F. Supp. 3d 871, 882 (D. Vt. 2021) ("Although the Regulations obligate the ALJ to explain how he or she considered the[] [supportability and consistency] factors, 'an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly.'")

daily living and manage his daily life independently" and "participate fully in his treatment and counseling sessions"; Ms. Hogle's treatment notes; and "the treatment notes from other care providers[.]"  T. at 19.  The record reflects that plaintiff stated he had difficulty concentrating and sleeping, did "not feel useful," and felt agitated and hopeless.  Id. at 588, 900, 1025.  Objectively, plaintiff appeared anxious, depressed, and frustrated.  See id. at 1064, 1066, 1068, 1076.  However, the record also reveals that plaintiff: dressed appropriately; had coherent thought processes; had normal affect; was oriented and appeared relaxed and comfortable; had intact attention, concentration, judgment, and recent and remote memory; was in no acute distress; and had a pleasant and appropriate mood.  See id. at 589, 825, 831, 845, 854, 865, 867, 892, 913-14, 926, 935-36, 985, 987, 1001, 1010, 1026, 1054.  Plaintiff argues that the records reflecting normal mental health findings "by orthopedic and pain management providers, not trained in or looking for mental health symptoms" "should not have outweighed" Ms. Hogle's opinions.  Dkt. No. 13 at 24.  This argument is meritless because an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  Matta, 508 F. App'x at 56.  The ALJ was entitled to consider all of the mental health evidence, even when provided by non-mental health physicians.  See, e.g., T. D. v. Comm'r of Soc. Sec., No. 1:17-CV-0243 (WBC), 2018 WL 3069186, at *6 (N.D.N.Y. June 21, 2018) ("Essentially the ALJ determined [that the consultative psychologist's opined] restrictive limitations were inconsistent with [the] [p]laintiff's testimony and objective medical evidence in the record" which included notes from the plaintiff's primary health care provider and other "provider[s]" that the plaintiff had a normal mood and affect and was cooperative.); Tracey H. v. Comm'r of Soc. Sec., No.

20-CV-159 (FPG), 2021 WL 3087632, at *2 (W.D.N.Y. July 22, 2021) (finding no error where the ALJ discounted the only mental health opinion in the record because "much of the record shows that [the] [p]laintiff displayed mostly normal mental status examinations and that [the] [p]laintiff's anxiety and depression were managed by medication.").

        The ALJ found that Dr. Shapiro's opinion was unpersuasive "in light of the additional evidence made a part of the record at the hearing level, including progress notes from Counselor Ho[gl]e."  T. at 20.  The ALJ thus determined that plaintiff had moderate limitations in all four areas of mental functioning despite finding both Dr. Shapiro's and Ms. Hogle's opinions unpersuasive.  See id. at 14-15.  As the ALJ explained, Ms. Hogle's treatment record reflected that plaintiff was anxious and depressed but was able to express his needs and wants and discuss his mental status and the reasons for it.  See id. at 19, 1064-79, 1084-1127.  Moreover, there is nothing in the record, aside from Ms. Hogle's 2019 assessment, that indicates that plaintiff is unable to remember or carry out simple instructions, maintain attention and concentration, perform activities within a schedule, sustain a routine, work in coordination with others, or complete a normal workday without interruptions.  See id. at 1150.  Plaintiff cites only Ms. Hogle's treatment notes that reflect that plaintiff was unhappy, frustrated, depressed, tired, and struggled with his physical symptoms.  See Dkt. No. 13 at 23; T. at 1150-51.  As explained, these records do not indicate that plaintiff had more than moderate limitations; accordingly, the ALJ's decision to find Ms. Hogle's opinion unpersuasive is supported by substantial evidence.  The ALJ's RFC is supported by substantial evidence because the ALJ appropriately considered the

consistency and supportability factors of the relevant opinions and reviewed the objective evidence and plaintiff's activities of daily living.  See, e.g., Ronald D., v. Comm'r of Soc. Sec., No. 2:20-CV-00197 (CR), 2021 WL 6133909, at *5, 12 (D. Vt. Dec. 29, 2021) (determining that "[s]ubstantial evidence [] supported the ALJ's determination that the opinions . . . were unpersuasive[]" where the ALJ "articulated how persuasive she found each medical opinion and explained how supportability and consistency were considered in reaching those determinations" and "properly considered the entire record in arriving at the mental limitations in her RFC."). Accordingly, remand is not warranted on this ground.


## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 3, 2022
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge